Mike Abourezk
ABOUREZK LAW FIRM
P.O. Box 9460
Rapid City, SD 57709-9460
Phone: (605) 342-0097
Fax:    (605) 342-5170
mike@abourezk.com

Kurt M. Jackson
HOYT & BLEWETT PLLC
P.O. Box 2807
Great Falls, MT 59403-2807
Phone: (406) 761-1960
Fax:    (406) 761-7186
kmj@hoytandblewett.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| DONALD K. LINDSAY and MARGARET A. LINDSAY, (Individually and as personal representatives of the estate of their son, Jeffrey D. Lindsay), <br><br> Plaintiffs, <br><br> v. <br><br> OWNERS INSURANCE COMPANY, <br><br> Defendant. | Cause No. 12-5066 |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**BRIEF IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
RE: INSURANCE COVERAGE**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INDEX OF EXHIBITS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

A.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B.    UNDISPUTED FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

C.    SUMMARY JUDGMENT STANDARDS . . . . . . . . . . . . . . . . . . . . . . 4

D.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        1.    The "Following Form" Endorsement Provides Additional UIM Coverage Under the Executive Umbrella Policy . . . . . . . . . . 6

        2.    Owners Must Be Estopped From Denying Additional UIM Coverage Under the Following Form Endorsement . . . . . . . . . . . 9

        3.    Owners is Estopped by its Own Definition of the Following Form Endorsement . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        4.    The Following Form Endorsement is At Least Ambiguous. . . . . . 15

        5.    The Umbrella Policy "Coverage" Terms are Ambiguous . . . . . . . 18

        6.    Plaintiffs are Entitled to Interest and Attorney Fees. . . . . . . . . . . 19

E.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

## Table of Cases

**Case**                                                                              **Page(s)**

*Auto-Owners Insurance Co. v. Hansen Housing, Inc.*,
    604 N.W.2d 504 (S.D. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Auto-Owners Insurance Co. v. Morris*, 81 Va. Cir. 337,
    2010 W.L. 7765095 (Va. Cir. Ct. 2010) . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 17

*Campion v. Park View Apartments*, 588 N.W.2d 897 (S.D. 1999) . . . . . . . . . . . . 5

*Continental Casualty Company v. Canadian Universal Ins. Co.*,
    924 F.2d 370 (1st Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Couch on Insurance,* § 21:7 (3rd Ed. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

*Discover Bank v. Stanley*, 757 N.W.2d 756 (S.D. 2008) . . . . . . . . . . . . . . . . . . . . 5

*Home-Owners Ins. Co. and Auto-Owners Ins. Co. v. Leikert,*
    2012 W.L. 247781 (Jan. 26, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

*Isaac v. State Farm*, 522 N.W.2d 752 (S.D. 1994) . . . . . . . . . . . . . . . . . . . . . . . 20

*Johnson v. American Family Life Assurance Co.*,
    83 F.Supp. 1450 (D.C. Col. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Nelson v. Farmers Mutual,* 684 N.W.2d 74 (S.D. 2004) . . . . . . . . . . . . . . . . . 5, 16

*Overfield v. American Underwriters Ins. Co.*,
    614 N.W.2d 814 (S.D. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9, 15

*Sarsfield v. Great American Ins. Co. of New York*,
    833 F. Supp.2d 125 (D.C. Mass. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Sawyer v. Farm Bureau Mutual Ins. Co.*, 619 N.W.2d 644
    (S.D. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*State Farm Mutual Automobile Ins. Co. v. Latham*,
    793 F.Supp. 183 (D.C. Ind. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Tripp v. Western National Mutual Ins. Co.*, 664 F.3d 1200
    (8th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Wadzinski v. Auto-Owners Ins. Co.*, 818 N.W.2d 819
    (Wisc. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Wadzinski v. Auto-Owners Ins. Co.*, 797 N.W.2d 910
    (Wisc. App. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

## Statutory Authority

**Page(s)**

**South Dakota Codified Laws**

§ 21-1-11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

§ 54-3-16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

§ 58-12-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

**South Dakota Local Rules**

Rule 56.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

## INDEX OF EXHIBITS

**Exhibit "1"**      Decision in *Auto-Owners Insurance Company v. Morris*
                     November 10, 2010

**Exhibit "2"**      Auto-Owners Umbrella Policy No. 48-654-973-02, Following
                     Form Endorsement (26265 (03-86))

**Exhibit "3"**      Auto-Owners Policy No. 48-654-973-02, Schedule A

**Exhibit "4"**      Decision in *Home-Owners Insurance Company v. Leikert*,
                     January 26, 2012

**Exhibit "5"**      Auto-Owners' Appellate Brief in the *Leikert* case
                     [Referenced pages only, pp. 4, 5, 7, 9, 14-16, 18, 21-22, 30, 33]

**Exhibit "6"**      Auto-Owners' Policy No. 48-654-973-02, "Glossary Of
                     Terms", Document DEF 1937

**Exhibit "7"**      Auto-Owners Insurance Company Policy Executive Umbrella
                     Forms "Alphabetical Index", Document DEF 2026-2028

**Exhibit "8"**      Auto-Owners' Umbrella Policy No. 48-654-973-02, "Insuring
                     Agreement", p. 1 of 6

**Exhibit "9"**      Auto-Owners' Umbrella Policy No. 48-654-973-02, "Personal
                     Injury" definition, p. 2 of 6

**Exhibit "10"**     Auto-Owners' Umbrella Policy No. 48-654-973-02,
                     "Conditions" ¶ 5, ¶ 8, and ¶ 10, p. 5/6 of 6

# A.  INTRODUCTION.

This is a claim for contractual underinsured motorist (UIM) benefits arising out of an August 3, 2011, motor vehicle accident in Montana, which caused the death of Plaintiffs' son, Jeffrey D. Lindsay.  Plaintiffs are the parents and duly appointed co-personal representatives of Jeffrey's estate.  Defendant, Owners Insurance Company (Owners), issued two contracts of insurance to Plaintiffs and Jeffrey in effect at the time of the accident.  Automobile Insurance Policy No. 48-654-973-01 provided UIM coverage in the amount of $500,000 per person/$500,000 per occurrence and Executive Umbrella Insurance Policy No. 48-654-973-02, provided additional coverage in the amount of $1,000,000 each occurrence.

The $500,000 UIM limits of the underlying Auto Policy have been exhausted.  Plaintiffs are entitled to $1,000,000 in additional UIM coverage under the Executive Umbrella Policy, as a matter of law, because a "Following Form" endorsement promises to provide coverage for personal injury to Jeffrey, "to the extent that insurance is provided by an underlying policy listed in Schedule A".  It is undisputed that the Owners Auto Policy, <u>which admittedly provided UIM personal injury insurance coverage to Jeffrey for the subject accident</u>, is listed as an underlying policy in Schedule A of the Umbrella Policy.

Plaintiffs are, therefore, entitled to summary judgment that, as a matter of law, they are entitled to additional UIM coverage under the Umbrella Policy in the amount of $1,000,000, plus ten percent interest, costs, and reasonable attorney fees.  Owners' cross-motion for summary judgment that the Umbrella Policy <u>only</u> provides third-party liability coverage and not excess UIM coverage should be denied.

**B.**   **UNDISPUTED FACTS.**

The material facts are undisputed and the parties have agreed to submit cross-motions for summary judgment on the purely legal issue of additional UIM coverage under the Umbrella Policy.  (Court's scheduling order, Doc. 14, p. 2, ¶ 6).  As set forth in Plaintiffs' contemporaneously filed Rule 56.1 "Statement of Material Facts," the following material facts are undisputed:

1.      Plaintiffs, Donald K. Lindsay and Margaret A. Lindsay are the parents and duly appointed co-personal representatives of the estate of their son, Jeffrey D. Lindsay, who was injured and subsequently died in a motor vehicle accident on August 3, 2011, on U.S. Highway 87 north of Billings, Yellowstone County, Montana.

2.      At the time of the accident, all of the Lindsays were residents and citizens of South Dakota.

3.      Defendant, Owners Insurance Company (Owners), is an Ohio Corporation with its principal place of business in Michigan.

4.      Owners' parent corporation is Auto-Owners Insurance Company and Auto-Owners owns more than 10% of Owners' stock.

5.      On August 3, 2011, Randall W. Dwyer (Dwyer) was operating a 1999 Freightliner conventional semi-truck southbound on U.S. Highway 87 at approximately mile marker 16 north of Billings, Yellowstone County, Montana.

6.      At the same time and place, Plaintiffs' son, Jeffrey D. Lindsay, was riding as a passenger in a 2000 Jeep Wrangler heading northbound on U.S. Highway 87.

7.      As the semi-truck and Jeep approached one another from opposite directions, the semi-truck operated by Dwyer illegally crossed the centerline and first collided with a northbound 1996 Chevy Cavalier and then subsequently collided with the Jeep, forcing it to leave the highway, overturn, and catch on fire.

8. As a direct, proximate, and substantial cause of the semi-truck's collision with the Jeep, Jeffrey D. Lindsay died.[1]

9. Dwyer, the operator of the semi-truck, was covered by liability insurance for the subject accident through Artisan & Truckers Casualty Company in the amount of $1,000,000 under Policy No. 08121478-0.

10. The collision caused one other death (in addition to Jeffrey's) and personal injuries to one other person.

11. The liability insurer for the semi-truck divided the applicable $1,000,000 liability limits between the Jeep occupants, with Plaintiffs receiving $487,500.

12. Plaintiffs also received $50,000 in UIM benefits from the primary UIM carrier which insured the 2000 Jeep Wrangler in which Jeffrey was riding as a passenger.

13. Owners issued an Automobile Insurance Policy to Plaintiffs, No. 48-654-973-01, in effect at the time of the subject accident, providing UIM coverage with limits in the amount of $500,000 per person/$500,000 per occurrence.

14. The amounts paid by Dwyer's liability insurer ($487,500) and by the primary UIM carrier ($50,000), exceed $500,000.

15. In addition to the Auto Insurance Policy, Owners also issued to Plaintiffs an Executive Umbrella Insurance Policy, No. 48-654-973-02, with additional coverage limits in the amount of $1,000,000.

---

[1] Plaintiffs claim that Jeffrey suffered severe personal injuries from which he subsequently died and, therefore, has a survivorship claim, whereas, Owners contends Jeffrey died instantaneously. This factual dispute is not material to the insurance coverage issue which is the subject of Plaintiffs' Motion for Summary Judgment.

16.     An endorsement issued with the Executive Umbrella Policy and attached thereto, entitled, "Exclusion of Personal Injury to Insureds Following Forum," provides:

> We do not cover personal injury to you or a relative.  <u>We will cover such injury to the extent that insurance is provided by an underlying policy listed in Schedule A</u>.

(Emphasis added).

17.     Schedule A of the Owners Umbrella Policy lists, as an underlying policy, the Owners Automobile Insurance Policy which provided UIM insurance coverage for personal injury to Plaintiffs, including Jeffrey for the subject accident, with limits in the amount of $500,000 per person/$500,000 per occurrence.

18.     On March 19, 2012, Plaintiffs first demanded that Owners pay the Umbrella Policy limits of $1,000,000.

19.     On August 9, 2011, Auto-Owners Ins. Co. filed its appellate brief in *Auto-Owners v. Leikert,* No. 302571 before the Michigan Court of Appeals.

20.     On January 28, 2013, Defendant Owners submitted its "Response to Plaintiffs' Amended First Set of Requests for Production of Documents to Defendant."

## C.     SUMMARY JUDGMENT STANDARDS.

Where the facts upon which liability is claimed or denied under an insurance policy are undisputed and the existence or amount of liability depends solely upon a construction of the policy, the question presented is one of law for the Court to decide.  *Continental Casualty Company v. Canadian Universal Ins. Co.,* 924 F.2d 370, 374 (1st Cir. 1991); *Sarsfield v. Great American Ins. Co. of New York*, 833 F. Supp.2d 125, 128 (D.C. Mass. 2000).  Interpretation of an insurance policy in light of undisputed facts is a question of law appropriate for decision by summary judgment.  *Johnson v. American Family Life Assurance Co.*,

583 F.Supp. 1450 (D.C. Col. 1984); *State Farm Mutual Automobile Ins. Co. v. Latham*, 793 F.Supp. 183, 185 (D.C. Ind. 1992).

In this case, there are no <u>material</u> issues of disputed fact concerning the legal issue of additional UIM coverage under the Owners Executive Umbrella Insurance Policy. Under applicable South Dakota law, "the effects and terms of a contract are questions of law to be resolved by the Court." *Discover Bank v. Stanley*, 757 N.W.2d 756, 762 (S.D. 2008). Whether the language of a contract is ambiguous is likewise a question of law for the Court. *Overfield v. American Underwriters Ins. Co.,* 614 N.W.2d 814, 816 (S.D. 2000).

An insurance contract is ambiguous when it is fairly susceptible to two different constructions and when application of rules of interpretation leave a genuine uncertainty as to which of two or more meanings is correct. *Campion v. Park View Apartments*, 588 N.W.2d 897, 902 (S.D. 1999); *Sawyer v. Farm Bureau Mutual Ins. Co.*, 619 N.W.2d 644, 648 (S.D. 2000). The Court must interpret provisions in an insurance policy which are "fairly susceptible" to different interpretations by choosing that interpretation <u>most favorable to the insured</u>. *Auto-Owners Insurance Co. v. Hansen Housing, Inc.*, 604 N.W.2d 504 (S.D. 2000); *Nelson v. Farmers Mutual,* 684 N.W.2d 74, 77 (S.D. 2004).

Where language in an insurance policy is of doubtful meaning and the issuing company has construed the language, such construction must be considered as persuasive, <u>especially if it is favorable to the insured</u>. An insurer may be <u>estopped</u> in reference to the meaning of a particular term in one of its contracts by its own interpretation of that term. *Overfield v. American Underwriters Life Ins. Co.,* 614 N.W.2d 814, 818-19 (S.D. 2000); *Couch on Insurance,* § 21:7 (3rd Ed. 1995).

**D.    ARGUMENT.**

      **1.    The "Following Form" Endorsement Provides Additional UIM Coverage Under the Executive Umbrella Policy.**

Owners contends that its Executive Umbrella Policy <u>only</u> provides excess liability coverage for claims by third parties against Plaintiffs and that it does not provide additional UIM coverage for personal injuries to Plaintiffs, including Jeffrey.  Owners relies exclusively on the "coverage" language of the Umbrella Policy itself and ignores the terms of the "Following Form" endorsement attached to the policy.  Owners' interpretation of the Umbrella Policy in this regard has been specifically rejected by a least two Courts and Owners' own parent company, Auto-Owners.[2]

In *Auto-Owners Insurance Company v. Morris*, 81 Va. Cir. 337, 2010 W.L. 7765095 (Va. Cir. Ct. 2010), the insured was injured in an accident for which he had coverage under two Auto-Owner policies. (Copy of decision attached hereto as Exhibit "1").  The first policy was a "Primary Automobile Insurance Policy" which provided UIM coverage.  The second policy was an "Umbrella Liability Policy".  Auto-Owners filed a declaratory judgment action that it had no duty to provide UIM coverage under the Umbrella Policy, the same argument Owners is making in this case.

The Auto-Owners Umbrella Policy in *Morris* included the <u>precise</u> "Following Form" endorsement as the Owners Executive Umbrella Policy in this case.  That endorsement (26265 (3-86)) provides as follows:

---

[2] As admitted in Owners' "Corporate Disclosure Statement" (Doc. 9), Auto-Owners is Owners' parent corporation and owns more than 10% of Owners' stock.

## EXCLUSION OF PERSONAL INJURY TO
## INSUREDS FOLLOWING FORM

> We do not cover personal injury to you or a relative. <u>We will cover such injury to the extent that insurance is provided by an underlying policy listed in Schedule A</u>.

(Emphasis added) (Endorsement attached hereto as Exhibit "2"). In *Morris*, like in this case, it was undisputed that the "primary" Automobile Policy provided UIM coverage and that such policy was listed as an underlying policy in Schedule A of the Umbrella Policy.

The Court applied basic and universal rules of insurance contract interpretation and held that the insured was entitled to additional UIM coverage under the umbrella policy. The Court acknowledged that under its terms, the umbrella policy was intended to provide third-party liability coverage and that "without consideration of the endorsement", the umbrella policy did not provide UIM coverage. *Id.* at *1. The Court then went on to examine the endorsement and concluded that, "to determine whether the umbrella policy provides UIM coverage to Mr. Morris, <u>the Court must determine what effect the endorsement has on that policy</u>." *Id.* at *2 (emphasis added).

The Court first examined the <u>title</u> of the endorsement which Auto-Owners argued was an exclusion which could not provide additional coverage for personal injury to an insured. The Court rejected that argument and held that when read "in context" with the body of the endorsement, the provision was an endorsement which provided <u>additional</u> coverage under the Umbrella Policy. The Court also held that compared with the entire body of the endorsement, the title was at least ambiguous and must be interpreted against Auto-Owners and in favor of coverage. Finally, the Court emphasized that in the title of the endorsement, Auto-Owners designated it a "following form endorsement" which "provides coverage identical to that provided by an underlying policy." *Id.* at *2. The Court concluded that

under these circumstances, "the title alone cannot bar coverage that the endorsement would otherwise provide." *Id.*

The Court then analyzed the language of the body of the endorsement and held that so long as insurance coverage for personal injury to an insured (UIM) is provided by an underlying policy listed in Schedule A of the Umbrella Policy, <u>the Umbrella Policy will provide that same coverage</u>:

> In moving to the body of the endorsement, the first sentence is an exclusion and if read alone would exclude coverage of any personal injury of the insured or a relative that is provided under the following form nature of the endorsement. <u>However, the second sentence is an exception and revives coverage of "such injury" (i.e., personal injury to you or a relative) so long as it is provided by an underlying policy, which in this case it is</u>.
>
> * * *
>
> Instead, when looking at the plain meaning of the endorsement and interpreting any ambiguities in favor of coverage, <u>if coverage is provided for personal injury to the insured or a relative in a policy listed in Schedule A, the umbrella policy will provide that same coverage</u>. Auto-Owners, as the drafter of the policy, failed to meet its burden to make the terms of the policy clear and unambiguous when denying coverage.
>
> * * *
>
> After analyzing the umbrella policy, the Court hereby finds that Mr. Morris is entitled to UIM coverage under the terms of the umbrella policy for his injuries sustained in the November 27, 2008 accident.

*Id.* at * 2, (emphasis added). Auto-Owners appealed to the Virginia Supreme Court but the Court held "there is no reversible error in the judgment complained of." (Supreme Court Order, Owners Document DEF 2118, attached hereto as part of Exhibit "1"). The Court also denied Auto-Owners' Petition for Rehearing. (Owners Doc. DEF 2119, Exhibit "1").

The Court should come to the same legal conclusion in this case. It is undisputed that the Owners Auto Policy is listed as an underlying policy in

Schedule A of the Umbrella Policy and that such underlying policy provides UIM coverage to Plaintiffs in this case. (Schedule "A" attached hereto as Exhibit "3"). Plaintiffs are entitled to additional UIM coverage under the Umbrella Policy, as a matter of law, and Plaintiffs' Motion for Summary Judgment should be granted.

**2.** **<u>Owners Must Be Estopped From Denying Additional UIM Coverage Under the Following Form Endorsement</u>**.

Under South Dakota law, "an insurer ... may be estopped in reference to the meaning of a particular term in one of its contracts <u>by its own interpretation of that term</u>." *Overfield v. American Underwriters Life Ins. Co.*, 614 N.W.2d 814, 818-19 ¶ 18 (S.D. 2000) (emphasis added). Moreover:

> Where the parties have, by certain acts of their own, placed a construction upon doubtful terms of a contract of insurance, this construction generally will be adopted by the courts as against them. At least, where language used in a policy is of doubtful meaning, and the issuing company has construed the same, such construction must be considered as very persuasive, <u>especially if it is favorable to the insured</u>.

*Id. Citing, Couch on Insurance,* § 21:7 (3rd Ed. 1995) (emphasis added).

Owners must be estopped from denying additional UIM coverage to Plaintiffs under the Following Form endorsement of its Executive Umbrella Insurance Policy in this case because its parent company, Auto-Owners Insurance Company, has previously construed <u>the exact endorsement </u>(26265 (3-86)) as providing insurance coverage for personal injury to an insured when such coverage is provided by an underlying policy listed in Schedule A of the Umbrella Policy.

In *Home-Owners Ins. Co. and Auto-Owners Ins. Co. v. Leikert,* 2012 W.L. 247781 (Jan. 26, 2012) (an unpublished opinion), Auto-Owners joined in a declaratory judgment action against its insured seeking a determination that its Executive Umbrella Insurance Policy did not provide any coverage for injuries to its insured resulting from a motorcycle accident. (Copy of decision attached hereto

as Exhibit "4").  Auto-Owners took the following position, which is directly contrary to the position Owners takes in this case:

> Auto-Owners also argued that it was entitled to a declaration that its umbrella policy did not provide coverage for the accident.  <u>Auto-Owners maintained that the umbrella policy only provided coverage for losses covered by policies listed under Schedule A of the umbrella policy.</u>  Because the policy that the Leikerts had with Progressive was not listed on that schedule and the only automobile policy that was listed on the schedule – the Auto-Club policy – did not provide coverage for the accident, the umbrella policy also did not provide coverage.  Auto-Owners specifically relied on the exclusion for personal injuries suffered by the insured or a relative: "We do not cover personal injury to you or a relative.  We will cover such injury to the extent that insurance is provided by an underlying policy listed in Schedule A."

P. 2, (emphasis added).

The trial court granted summary judgment for Auto-Owners:

> <u>The trial court first determined that the exception for the exclusion for injuries to the insured or the insured's relatives will not apply unless a policy listed under Schedule A actually provided coverage for the loss.</u>  It then determined that the only policy listed under Schedule A that could theoretically apply, the Auto-Club policy did not provide coverage.  As such, it determined that, as a matter of law, the umbrella policy also did not provide coverage.

P. 2, (emphasis added).  In affirming the trial court's ruling, the appeals court adopted Auto-Owners' own construction of the underlying insurance "exception" to the no coverage for personal injury to insureds "exclusion":

> With this exception, Auto-Owners <u>clearly</u> agreed to cover injuries to the insured or the insured's relative, notwithstanding the exclusion, "to the extent that insurance is provided by an underlying policy listed in Schedule A."  The phrase "to the extent that" is a limiting phrase; it limits the coverage to a particular situation: <u>namely, to those situations where "insurance is provided by" an underlying policy</u>.

P. 4, (emphasis added).

In opposition to this "clear" construction and meaning of the Following Form endorsement, the insureds (Liekerts) argued that so long as there is an underlying "insurance" policy listed in Schedule A, the exception is satisfied even if such policy does not provide insurance "coverage." The Court rejected such a "strained" construction and held that the underlying insurance "exception" is not ambiguous:

> We will not give this exception such a strained construction. Rather, we construe this exception to mean that a policy listed under Schedule A must provide coverage for the specific injuries at issue in order to avoid the exclusion.
>
> The exception to the exclusion applies "to the extent" that a "policy listed in Schedule A" provides "insurance." That is, the exception applies if – and only if – a policy listed on Schedule A covers the injury to the insured or the insured's relative. Because it is not ambiguous, we will enforce it as written. [citation omitted]. Here, none of the policies listed under Schedule A applied to the accident at issue. Therefore, this exclusion precludes coverage under the umbrella policy.

PP. 4, (emphasis added).

In so ruling, the Michigan Court of Appeals completely adopted and accepted Auto-Owners own unambiguous and clear construction and interpretation of the Following Form endorsement. In its Appellate Brief in the *Leikert* case, dated August 9, 2011, Auto-Owners repeatedly argued to the Court that its Executive Umbrella Policy provides excess coverage for personal injuries to insureds so long as such coverage for the accident at issue is actually provided by an underlying insurance policy listed in Schedule A of the umbrella policy:

> • "The executive umbrella liability policy excludes coverage for personal injury to an insured or relative; it provides an exception to the exclusion only to the extent that an underlying policy listed in Schedule A provides insurance."
> p. 4.

- "Because there was no insurance provided for the motorcycle under a scheduled policy, and the Progressive policy which paid was not a scheduled policy, the Auto-Owners umbrella policy did not apply." p. 5.

- "Auto-Owners responded to the Leikerts' summary disposition motion by pointing out that when an umbrella policy is premised on an underlying insurance policy paying before the umbrella, <u>there is no ambiguity in referring to insurance provided in an underlying policy</u>." (Emphasis added). p. 5.

- "Auto-Owners filed a reply brief [in the trial court] noting that the Leikerts' reliance on the "other insurance" and "underlying insurance" provisions [of the umbrella policy] failed to recognize that the exclusion <u>endorsement</u> overrode the form provisions of the policy." (Emphasis added). p. 7.

- Auto-Owners' Appellate Brief quotes the trial court's ruling as follows:

   "In conclusion, this Court finds that the exception to the exclusion of personal injury to insureds under Auto-Owners' umbrella insurance policy requires that an underlying policy listed in Schedule A provide coverage." p. 9.

- "The exception to the exclusion states, 'We will cover such injury to the extent that insurance is provided by an underlying policy listed in Schedule A.' Using a common meaning of these words as a phrase, the underlying insurance has to be provided in the sense of paying." p. 14.

- "... it must be stressed that in the context here where an umbrella policy is premised on an underlying insurance policy paying before the umbrella, <u>there is no ambiguity in referring to insurance provided in an underlying policy</u>." (Emphasis added). pp. 15-16.

- "(Following Form coverage is insurance that follows the same terms and conditions as the underlying or primary policy). Thus, it is a condition of umbrella coverage that the specified underlying policies actually pay." p. 16.

- Therefore, Auto-Owners' use of the phrase "<u>to the extent that</u> insurance is provided" is the equivalent of "<u>if</u> coverage is provided." (Emphasis in original). p. 18.

- "If it is not insurance that AAA [underlying policy listed in schedule A] must provide (because it does not cover the motorcycle), then the condition of the following form endorsement is not satisfied, the exception to the exclusion for injury to a co-insured does not apply, and the unfulfilled condition means the Auto-Owners umbrella does not "kick in." pp. 21-22.

- "The coverage [of the umbrella policy] follows form to scheduled policies, not unscheduled policies." p. 30.

- "The endorsement does not provide that Auto-Owners will cover injuries for which <u>other</u> insurance is provided. Nor does it merely state that Auto-Owners will cover injuries for which underlying insurance is provided. Rather, it states that Auto-Owners "will cover such injury [personal injury to insureds] to the extent that insurance is provided by an <u>underlying policy listed in Schedule A</u>." The Progressive Policy is not listed in Schedule A. Therefore, the exception to the exclusion does not provide coverage for Mrs. Leikert's claim through the Progressive policy." (Emphasis in original). p. 30.

- "Auto-Owners' executive umbrella liability policy only provides coverage for a claim of bodily injury to an insured if one of its underlying policies listed in Schedule A provides insurance for the claim." p. 33.[3]

Of course, Auto-Owners' interpretation and construction of the Following Form endorsement was favorable to its position in the *Leikert* case because there was no "underlying policy" which provided coverage for the claim. In this case, it is undisputed that the Owners Auto Policy is listed as an underlying policy in Schedule A of the Umbrella Policy and does actually provide UIM insurance coverage for the subject accident. The unambiguous underlying insurance

---

[3] Plaintiffs' estoppel argument is even stronger because Auto-Owners made these arguments in favor of excess coverage under its Executive Umbrella Insurance Policy to the Courts of Michigan, its home state and principal place of business. (All referenced pages of Auto-Owners' Appellate Brief in the *Leikert* case are attached hereto as Exhibit "5").

"exception" in the Following Form endorsement is satisfied in this case, as a matter of law, Owners is <u>estopped</u> form contending otherwise, and Plaintiffs' Motion for Summary Judgment on coverage should be granted.

     **3.**    <u>**Owners is Estopped by its Own Definition of the Following Form Endorsement**</u>.

In response to Plaintiffs' Request for Production of Documents No. 2, which requested any documents, "created by Defendant, used at any time in the past 10 years to train, assist or guide Defendant's personnel defining coverages under the Executive Umbrella Insurance Policy", Owners produced certain "materials specifically relating to the Executive Umbrella Insurance Policy." (Exhibit "G" attached to Plaintiffs' Statement of Material Facts).

Owners produced document DEF 1937, which is a "Glossary of Terms" setting forth the following definitions of terms utilized in Owners' Executive Umbrella Policy:

> ***Follow Form*:**  An excess policy whose insuring agreements, policy terms, exclusions and conditions are nearly identical to those of the underlying insurance.
>
> ***Following Form Endorsements:*** When attached to the umbrella policy, they provide <u>coverage</u> to the extent it is provided in the scheduled underlying insurance.

(Emphasis added).  (Document DEF 1937 attached hereto as Exhibit "6").  These definitions are consistent with the arguments Auto-Owners made to the Court in the *Leikert* case that its executive umbrella policy provides coverage for a claim of bodily injury to an insured if an underlying policy listed in Schedule A provides such coverage.

Owners also produced document DEF 2026-2028, which is an "Alphabetical Index" of "Executive Umbrella Forms" used in Auto-Owners' umbrella policies.  The Following Form Endorsement at issue in this case, 26265 (03-86) is listed as follows:

**EXCLUSION OF PERSONAL INJURY TO INSUREDS FOLLOWING FORM** - 26265 (FL) (03-86).

> Provides <u>coverage</u> for personal injury to insureds on a following form basis.

(Emphasis added). (Document DEF 2026-2028, attached hereto as Exhibit "7").

Owners' own training documents establish, therefore, that the Following Form Endorsement (26265 (03-86) attached to the Plaintiffs' umbrella policy (Exhibit "2" attached hereto) provides UIM <u>coverage</u> for personal injury to Plaintiffs and Jeffrey on a following form basis to the extent that UIM <u>coverage</u> is provided in the scheduled underlying insurance. It is undisputed that the scheduled underlying insurance provides Plaintiffs and Jeffrey UIM <u>coverage</u> for personal injury resulting from the subject accident.

According to Owners' own interpretation of the terms of its Following Form Endorsement, therefore, the Executive Umbrella Policy provides additional UIM coverage to Plaintiffs over and above that provided by the underlying automobile policy listed in Schedule "A" of the umbrella policy. Owners is estopped from contending otherwise and Plaintiffs' Motion for Summary Judgment should be granted. *See, Overfield, supra* at 818-19 ¶ 18 (insurer estopped in reference to the meaning of a particular term in one of its contracts by its own interpretation of that term).

### 4. <u>The Following Form Endorsement is At Least Ambiguous</u>.

The Following Form endorsement attached to the Auto-Owners and Owners Executive Umbrella Policy "clearly" and "unambiguously" provides excess UIM coverage to Plaintiffs because the Owners Auto Policy, which provided underlying UIM coverage to Plaintiffs for the subject accident, is admittedly an underlying policy listed in Schedule A of the Umbrella Policy. In *Leikert*, the Court held that Auto-Owners "clearly" agreed to provide such excess coverage and in its appellate brief, Auto-Owners strenuously argued that it is <u>not ambiguous</u> to provide such

excess coverage by reference to an underlying listed policy. (Auto-Owners' Appellate Brief pp. 5; 15-16) (Exhibit "5").

To the extent, however, that any other Court has adopted, or will adopt, a contrary interpretation of the Following Form endorsement, the endorsement must, as a matter of law, be deemed ambiguous and strictly construed against Owners and in favor of coverage. *See, Nelson v. Farmers Mutual Ins. Co. Of Nebraska*, 684 N.W.2d 74, 77-78, ¶ 11 (S.D. 2004). Thus, to the extent that Owners attempts to rely on any case which interprets and construes its Following Form endorsement as <u>not</u> providing the same coverage as provided by an underlying policy listed in Schedule A, Owners necessarily admits there is an ambiguity which must be construed in favor of excess coverage.[4]

In *Wadzinski v. Auto-Owners Ins. Co.*, 818 N.W.2d 819 (Wisc. 2012), the Wisconsin Supreme Court reversed a decision of the Wisconsin Court of Appeals which had, in turn, reversed a decision of the Circuit Trial Court. The trial court had granted summary judgment to Auto-Owners holding that the Following Form endorsement of Auto-Owners' Executive Umbrella Policy did <u>not</u> provide additional uninsured motorist (UM) coverage, even though an underlying Auto-Owners Policy listed in Schedule A of the Umbrella Policy did provide such UM coverage.

The Wisconsin Court of Appeals, 797 N.W.2d 910 (Wisc. App. 2011), reversed the trial court and held that the Following Form endorsement was "contextually ambiguous" because there were two reasonable interpretations of the second sentence of the endorsement which provides, "we <u>will</u> cover such injury

---

[4] Plaintiffs agree with the position taken by Auto-Owners in *Leikert* that the Following Form endorsement unambiguously provides the same coverage as a listed underlying policy. The endorsement is only ambiguous to the extent that Owners now attempts to rely on any case or position which comes to a contrary conclusion.

[personal injury to an insured] to the extent that insurance is provided by an underlying policy listed in Schedule A." The Appeals Court concluded that one reasonable interpretation was that, "if an underlying policy covers the risk, so does the executive umbrella." *Id.* at 915, ¶ 15. Because the endorsement was ambiguous, coverage was granted to the insureds. *Id.* at 918, ¶ 28.

The Wisconsin Supreme Court then reversed the Court of Appeals with two justices, including the Chief Justice, dissenting. The majority concluded that the second sentence of the endorsement <u>only</u> means that the umbrella policy will not "negate" any coverage which is already granted by an underlying policy, but it will not provide additional coverage. *Id.* at 828-29, ¶ 27. The dissent characterized the majority's interpretation as "nonsensical" and agreed with the Court of Appeals and the Courts in *Leikert* and *Morris*. *Id.* at 834, ¶ 56. The case was argued to the Wisconsin Supreme Court on January 10, 2012, and the Court's opinion is dated July 5, 2012. It does not appear that Auto-Owners ever informed the Wisconsin Supreme Court of the arguments in favor of excess umbrella coverage which it made in its August 9, 2011, brief to the Michigan Court of Appeals in the *Leikert* case. Owners also did not disclose the *Leikert* case in its response to Plaintiffs' Request for Production No. 3, seeking "any and all rulings from any court related to claims made for UM or UIM benefits under an Executive Umbrella Insurance Policy". (Exhibit "G", pp. 3-4 attached to Plaintiffs' Statement of Material Facts).

With such differences of opinion concerning the meaning of the Following Form endorsement, including Auto-Owners' <u>own</u> interpretation in favor of excess coverage, the Executive Umbrella Policy is, <u>at the very least</u>, susceptible to different interpretations, is ambiguous and must, therefore, be interpreted in favor of coverage on behalf of the Plaintiffs. Plaintiffs' Motion for Summary Judgment requiring additional UIM coverage under the Umbrella Policy should be granted.

**5.    The Umbrella Policy "Coverage" Terms are Ambiguous.**

Owners' contention that its Executive Umbrella Policy <u>only</u> provides excess third-party liability coverage is also belied by the "coverage" terms of that policy. The "Insuring Agreement" of the Umbrella Policy (p. 1 of 6) provides that, "this policy applies to <u>personal injury</u> and property damage which occur during the policy period as shown in the Declarations."  (Emphasis added) (Attached hereto as Exhibit "8").  This "Insuring Agreement" is not restricted or limited to "personal injury" to third parties for which the Lindsay may be liable.  The term "personal injury" must necessarily include personal injury sustained by the Lindsays themselves or any relative.

Under the Umbrella Policy's definitions, "personal injury" is defined as:

> **"Personal Injury"** means:
>
> (a) bodily injury, sickness, disease, disability or shock;
> (b) mental anguish or mental injury;
>
> * * *
>
> including resulting death, <u>sustained by any person</u>.

(p. 2 of 6) (emphasis added) (Attached hereto as Exhibit "9").  This definition of personal injury "sustained by <u>any person</u>" is consistent with the Following Form endorsement providing coverage for personal injury to any insured (or relative) to the extent provided by an underlying policy.  The definition conflicts with Owners' interpretation that personal injury to an insured is not covered.

Other "Conditions" of the Umbrella Policy make it clear that it covers more than just an insured's liability for personal injury to others.  Paragraph 5, under "Conditions" (p. 5 of 6) requires the Lindsays to "keep each policy described in Schedule A in full effect during the term of this policy."  This "condition" is not limited to third-party liability "coverage" but requires the Lindsays to provide written notice of "(a) <u>any</u> change in the <u>scope</u> of coverage" and "(c) the termination of <u>any coverage</u> ... of any policy listed in Schedule A."  (Attached

-18-

hereto as Exhibit "10"). Therefore, the Umbrella Policy itself contemplates that any listed underlying policy will include multiple "coverages", including UIM coverage, and not just coverage for third-party liability claims.

Paragraph 8, under "Conditions" (p. 5 of 6), entitled "Suit Against Us" provides that, "We may not be sued unless there is full compliance with all the terms of this policy." (Exhibit "10"). The only circumstance where Owners, itself, could be sued under the Umbrella Policy is by Lindsays to enforce UIM coverage in excess of the underlying policy. This language makes it clear that the Umbrella Policy provides UIM coverage in addition to that provided by an underlying policy listed in Schedule A.

Paragraph 10, under "Conditions" (pp. 5/6 of 6), gives Owners the "right to recover to the extent of our payment from anyone held responsible. The insured will do whatever is required to transfer this right to us." (Emphasis added) (Exhibit "10"). The only circumstance where Owners would have the right to recover payment, made by Owners, from anyone held responsible, would be in the case of subrogation for UIM payments made under the Umbrella Policy. Owners would not have any right to recover from the Lindsays, as responsible parties, any payments made by Owners in satisfaction of a third-party liability claim.

These policy provisions establish that Owners' Executive Umbrella Insurance Policy is not solely and exclusively an excess "liability policy", but provides expanded UIM coverage to Lindsays in the amount of $1,000,000. These competing provisions, as a whole, create ambiguities in the coverage terms of the Umbrella Policy, which must be construed in favor of UIM coverage for the Lindsays.

**6.** **Plaintiffs are Entitled to Interest and Attorney Fees**.

Plaintiffs' Complaint requests statutory interest and reasonable attorney fees, plus costs and disbursements incurred herein. Under S.D.C.L. § 21-1-11,

Plaintiffs are entitled to statutory interest of 10% per annum (S.D.C.L. § 54-3-16) from March 19, 2012, the date Plaintiffs first demanded that Owners pay the umbrella policy limits of $1,000,000. *See, Isaac v. State Farm*, 522 N.W.2d 752, 763 (S.D. 1994). (Exhibit "E" attached to "Statement of Material Facts").

Plaintiffs are also entitled to attorney fees under S.D.C.L. § 58-12-3 because Owners unreasonably forced Plaintiffs to resort to litigation in order to obtain the contractual UIM benefits under the Executive Umbrella Policy. *See, Tripp v. Western National Mutual Ins. Co.*, 664 F.3d 1200, 1206-07 (8th Cir. 2011). Owners and its parent company, Auto-Owners, knew of their arguments in the *Leikert* case long before Plaintiffs made their demand for the umbrella policy limits, but Owners refused to pay anyway. (Exhibit "F" attached to "Statement of Material Facts").

E.    **CONCLUSION**.

It is undisputed that the Owners Automobile Policy (No. 48-654-973-01) which admittedly "insured" and "covered" Plaintiffs and Jeffrey for UIM benefits for the subject accident, is also listed as an underlying policy in Schedule A of the Owners Executive Umbrella Policy (No. 48-654-973-02).

Pursuant to the clear and unambiguous terms of the Following Form endorsement (26265 (3-86)), attached to the Umbrella Policy, Plaintiffs are entitled to $1,000,000 in additional UIM benefits under the Umbrella policy, as a matter of law. Plaintiffs' Motion for Summary Judgment on the issue of additional UIM coverage under the Umbrella Policy should be granted and Plaintiffs should be awarded costs, interest and attorney fees.

DATED this 28th day of February, 2013.

ABOUREZK LAW FIRM


By:  /s/ Mike Abourezk
Mike Abourezk
P.O. Box 9460
Rapid City, SD 57709-9460

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that, on this 28th day of February, 2013, a copy of the
foregoing document was served on the following persons by the following means:


1, 2  CM/ECF
_____  Hand Delivery
_____  Mail
_____  Overnight Delivery Service
_____  Fax
_____  E-Mail

1. Clerk, U.S. District Court

2. Roy A. Wise
   RICHARDSON, WYLY, WISE, SAUCK
     & HIEB, LLP
   One Court Street
   P.O. Box 1030
   Aberdeen, SD 57402-1030
   Attorneys for Defendant

ABOUREZK LAW FIRM


By:  /s/ Mike Abourezk
Mike Abourezk
P.O. Box 9460
Rapid City, SD 57709-9460

Attorneys for Plaintiffs