STATE OF MICHIGAN
IN THE COURT OF APPEALS

HOME-OWNERS INSURANCE COMPANY,
and AUTO-OWNERS INSURANCE COMPANY

      Plaintiffs/Appellees,

v

HOWARD LEIKERT and APRIL LEIKERT,

      Defendants/Appellants,

and AUTO CLUB INSURANCE ASSOCIATION,

      Defendant/Appellee,

and

AUTO CLUB INSURANCE ASSOCIATION,

      Cross Plaintiff/Appellee,

v

HOWARD LEIKERT and APRIL LEIKERT,

      Cross Defendants/Appellants.

Court of Appeals No. 302571
Lower Court No. 10-08821-CK

RECEIVED 2011 AUG -9 PM 4:32 COURT OF APPEALS LANSING

---

**PLAINTIFF/APPELLEE AUTO-OWNERS INSURANCE COMPANY'S
BRIEF ON APPEAL**

**ORAL ARGUMENT REQUESTED**

Respectfully submitted,

WILLINGHAM & COTÉ, P.C.
Attorneys for Plaintiff/Appellee
Auto-Owners Insurance Company
BY    Kimberlee A. Hillock (P65647)
      John A. Yeager (P26756)

333 Albert Avenue, Suite 500
East Lansing, MI 48823
517-351-6200

**Exhibit "5"**

policy.[9] The executive umbrella liability policy excludes coverage for personal injury to an insured or relative; it provides an exception to the exclusion only to the extent that an underlying policy listed in Schedule A provides insurance.[10] The motorcycle policy issued by Progressive Insurance Company was not listed in Schedule A of the Auto-Owners executive umbrella liability policy,[11] and the Leikerts have disclaimed any right to recovery under the two homeowners policies issued by Home-Owners Insurance Company listed in Schedule A.[12]

Auto-Owners' executive umbrella liability policy also listed an automobile policy issued by AAA, which provided liability, no-fault, and uninsured/underinsured motorist coverage.[13] AAA did not insure the motorcycle. With respect to liability coverage, the policy only provided coverage if the vehicle involved was "an insured car," and specifically excluded coverage for vehicles owned but not listed in the declarations.[14] With respect to underinsured motorist coverage, the AAA policy excluded coverage for injury sustained while occupying an owned motor vehicle that was not insured by AAA, unless the vehicle met the definition of "your car."[15] The Harley Davidson motorcycle did not. It was owned by Mr. Leikert and did not meet any of the definitions of "your car";[16] therefore, it did not qualify for underinsured motorist coverage under the AAA policy. Thus, there was no AAA underinsured motorist insurance provided for Mrs.

---

[9] First Amended Complaint, 10/12/10.
[10] Endorsement form 26265, which is part of Exhibit 2 to Auto-Owners' summary disposition motion, has been separately attached hereto as Exhibit H for the Court's convenience.
[11] See Exhibit B.
[12] See defendants' brief on appeal, p 12.
[13] A copy of this policy is attached as Exhibit 3 to Auto-Owners' summary disposition motion and has been attached hereto as Exhibit I.
[14] See Exhibit E to Defendants' brief in support of cross motion for summary disposition, attached hereto as Exhibit J, p 4, INSURING AGREEMENT, 1; EXCLUSIONS, 1.d.
[15] Exhibit J, p 11, EXCLUSIONS, 1.a.
[16] Exhibit J, p 3, DEFINITIONS, 6.a.

Leikert's injuries. Because there was no insurance provided for the motorcycle under a scheduled policy, and the Progressive policy which paid was not a scheduled policy, the Auto-Owners umbrella policy did not apply. Auto-Owners owed no coverage under its executive umbrella liability policy for the March 4, 2009 accident. On this basis, Auto-Owners moved for summary disposition.[17]

The Leikerts filed a cross-motion for summary disposition, arguing that (a) the Auto-Owners executive umbrella liability policy acted as an umbrella policy over all insurance coverage issued to Mr. Leikert; (b) the personal injury to insureds or relatives exclusion in the executive umbrella liability policy was ambiguous because it stated that the underlying policy must provide insurance, not coverage; and (c) Auto-Owners admitted that insurance was provided by AAA.[18]

Auto-Owners responded to the Leikerts' summary disposition motion[19] by pointing out that when an umbrella policy is premised on an underlying insurance policy paying before the umbrella, there is no ambiguity in referring to insurance provided in an underlying policy. There was nothing ambiguous about the exception: "We do not cover personal injury to you or a relative." Because it was the Leikerts' ultimate burden to show that they were entitled to coverage, it was their burden to show that the exception to the exclusion applied. The Leikerts failed to do so. The Leikerts' interpretation urged the trial court to ignore the language of the provision by ignoring the phrase, "to the extent" that insurance is provided and to read the policy as providing coverage if any

---

[17] Plaintiffs Home-Owners Insurance Company's and Auto-Owners Insurance Company's Motion for Summary Disposition Pursuant to MCR 2.116(C)(10), 1/5/11.

[18] Defendants' Brief in Support of Cross Motion for Summary Disposition Pursuant to MCR 2.116(C)(8) and (10), 1/7/11.

[19] Plaintiffs' Response to Defendants Leikerts' Cross Motion for Summary Disposition Pursuant to MCR 2.116(C)(8) and (10), 1/19/11.

word "coverage" to argue that the exclusion endorsement did not mean coverage. The AAA policy could only be examined to see if it would cover a claim by one spouse against the other spouse for bodily injury, not whether the policy would cover a claim involving a motorcycle that was not insured by the policy. Without explaining exactly how an auto policy would cover one spouse's claim against the other spouse when the claim was precluded because of no covered vehicle, the Leikerts nevertheless argued that the AAA policy did just that. Apparently failing to grasp that it was their own urged interpretation of the policy which called for a finding that the retained limit required the underlying limits of all policies listed in schedule A to be exhausted, the Leikerts argued that this assertion was incredible. They, in fact, cited authority which held that such an interpretation is false, thus inadvertently demonstrating why their interpretation of the instant policy is false. The Leikerts then appeared to argue that the term "insurance" was ambiguous because used differently in the "Retained Limit" section and the exclusion endorsement, although there was no reason to treat the terms differently.

Auto-Owners filed a reply brief noting that the Leikerts' reliance on the "other insurance" and "underlying insurance" provisions failed to recognize that the exclusion endorsement overrode the form provisions of the policy. There were six additional reasons why the Leikerts did not establish an ambiguity in the policy, i.e., that a fair reading of the policy could lead one to understand that there was coverage. (1) when the context of the type of insurance was considered, it was a strain to think that an umbrella policy would require insurance to be provided as a condition of lifting an exclusion yet not require the insurance to pay; (2) "insurance" so construed would still not lead to coverage because the same word is used in the retained limits definition,

* * *

In conclusion, this Court finds that the exception to the exclusion of personal injury to insureds under Auto-Owners' umbrella insurance policy requires that an underlying policy listed in Schedule A provide coverage. The only underlying policy listed in Schedule A at issue, AAA's automobile insurance policy, does not provide coverage for the March 4, 2009 motorcycle accident. Therefore, there is no coverage under Auto-Owners' umbrella insurance policy for the March 4, 2009 motorcycle accident.[22]

The Leikerts have now appealed.

---

[22] Exhibit A.

The Leikerts seek to avoid this exclusion by application of the exception to the exclusion. A policyholder has the ultimate burden of proving that there is coverage under an insurance policy. *Heniser, supra*, 449 Mich 155, 172. "[T]he burden of proving an exception to an exclusion rests with the insured." *Upjohn Co v Aetna Cas and Surety Co*, 850 F Supp 1342, 1345 (WD Mich 1993). Accord, *Aetna Cas & Surety Co v Dow Chemical Co*, 28 F Supp 2d 440, 444 (ED Mich 1998). Thus, it is the Leikerts' burden of demonstrating that the exception to the exclusion applies.

The exception to the exclusion states, "We will cover such injury to the extent that insurance is provided by an underlying policy listed in Schedule A." Using a common meaning of these words as a phrase, the underlying insurance has to be provided in the sense of paying. The Leikerts want to torture the word "insurance" to say it does not mean coverage, so there could be insurance provided in the sense that it is a policy in force but it does not have to pay on the loss at issue. The beginning flaw in this is that insureds may not employ a sophisticated version of a term to create a claim of ambiguity. *Heniser, supra*, 449 Mich 155, 163.

They argue that because the exception does not say "to the extent that insurance coverage is provided," the executive umbrella liability policy provides coverage for Mrs. Leikert's injuries as long as <u>any</u> insurance is provided to Mrs. Leikert in schedule A, regardless whether that underlying policy actually provides insurance in the sense of paying for the bodily injury claim at issue. They illogically disavow the home owners policies listed but maintain that the AAA auto policy somehow applies but need not be invoked to pay on the default judgment. The premise of their argument is flawed for four reasons.

**A.    The Leikerts' Proposed Construction Ignores the Structure and Purpose of an Umbrella Policy**

First, the context here is an umbrella policy with "underlying" insurance. Underlying insurance always must pay before the umbrella, in light of *Bosco, supra*, 456 Mich at 293.  In *Bosco, supra*, the Supreme Court addressed the nature of an umbrella policy.  The Court contrasted a primary policy, a primary policy that could conditionally be an excess policy but was not written as an umbrella, and, a true excess policy -- an umbrella policy that is not written as primary coverage.  Here we have primary motorcycle insurance by Progressive that is not scheduled, a primary auto policy by AAA that does not insure the motorcycle but is scheduled as primary insurance, and the umbrella policy at issue.

The notion advanced by Leikerts that the umbrella pays even if the AAA primary policy "provides insurance" but does not pay is refuted by *Bosco:* "Where a policy is, in most instances, a primary policy, its limits should be exhausted before an umbrella policy is required to contribute."  456 Mich 279, 294.  Even if the AAA auto policy is conditionally excess to the Progressive motorcycle policy, under *Bosco* it still is an underlying policy that would have to be exhausted before the umbrella:

> [U]nder an umbrella policy, liability will never automatically attach upon the occurrence of an insured event.  Rather, liability under a true excess/umbrella policy only attaches once the limits of all underlying insurance have been exhausted.  [*Id.* at 296 (emphasis added).]

Thus, courts do consider the type of insurance as held by *Stark, supra*, and illustrated in the umbrella context by *Bosco.* And, since in *Heniser* the Court recognized that a provision of an insurance policy was not ambiguous in that context even though it might be in another, it must be stressed that in the context here where an umbrella policy is premised on an underlying insurance policy paying before the umbrella, there

is no ambiguity in referring to insurance provided in an underlying policy. It is quite contrary to the intent of an "Umbrella" type of policy to say that the AAA policy would be listed as underlying insurance and yet not have to pay before the umbrella with a following form condition. To follow form means the umbrella is no broader than the policy it follows. *Coleman Co Inc v California Union Ins Co*, 960 F2d 1529, 1530 n 1 (CA 10, 1992); *Nat'l Union Fire Ins Co v LE My Ins Co Group*, 1995 US Dist LEXIS 14432 (SD NY, 1995) ("'Following form' coverage is insurance that follows the same terms and conditions as the underlying or primary policy."). Thus, it is a condition of umbrella coverage that the specified underlying policies actually pay.

An umbrella policy does not "kick in" where underlying insurance is required by the umbrella, but it is not present as specified in the umbrella. *Michigan Millers Mutual Ins Co v North American Reinsurance Corp*, 182 Mich App 410, 415; 452 NW2d 841 (1990). To say there is ambiguity here would thus violate the rule that a court considers the context, *Stark, supra*, and that a court cannot create an ambiguity where none exists, *Heniser, supra*, 449 Mich 155, 161.

### B. The Leikerts' Proposed Construction Requires This Court to Ignore Words of Limitation Contained in the Exception

The second reason is because the exception contains words of limitation – "to the extent that" – which are synonymous with "coverage" that actually pays. According to the Leikerts' interpretation of the exception to the exclusion, Mrs. Leikert's injuries are covered by the Auto-Owners umbrella, "**if** insurance is provided by any policies listed on Schedule A."[26] The exception to the exclusion does not say coverage is owed "**if** insurance is provided." It states coverage is owed "**to the extent that** insurance is

---

[26] Appellants' brief on appeal, p 13.

16

the "amount, and **extent** of risk covered by insurer."[30] [ *United States Fidelity Ins & Guaranty Co, supra,* 484 Mich at 16 (emphasis added).]

Therefore, Auto-Owners' use of the phrase "to the extent that insurance is provided" is the equivalent of "if coverage is provided." The Leikerts' argument that any listing of underlying insurance, even if inapplicable to this loss, nonetheless triggers umbrella coverage for Mrs. Leikert's injuries under Auto-Owners' executive umbrella liability policy is incorrect. If the scheduled underlying insurance by AAA does not pay, it is not insurance that is provided to that extent, and the following form condition is not satisfied.

### C. The Leikerts' Proposed Construction Creates an Unresolvable Conflict With the Policy's Definition of Retained Limits That Still Does Not Require Auto-Owners to Pay

Third, the error of the Leikerts is borne out by provisions that they have not come to grips with in their brief. The Leikerts' interpretation of "insurance" in the following form endorsement is self-defeating. If "insurance" as used in the following form endorsement doesn't carry with it the sense of paying on a claim as is the intent of primary insurance relative to umbrella insurance recognized by the Supreme Court in *Bosco*, and instead "insurance" means merely being a listed policy that does not actually pay on the loss, this umbrella would still not "kick in." This is because the "Retained Limits" definition in conjunction with the insuring agreement would mean that the umbrella would not pay for this loss since below the retained limit.

The base coverage agreement of the umbrella is to "pay on behalf of the insured the ultimate net loss in excess of the retained limit... ."[31] The definition of "retained limit"

---

[29] *Random House Webster's Dictionary* (2001).
[30] Black's Law Dictionary (5th ed).
[31] Auto-Owners Umbrella, p 3 – PERSONAL LIABILITY.

default judgment is below the retained limits as construed in accordance with "insurance" as defined by Leikerts, the retained limits have not been exceeded so that the umbrella would apply.[34]

The Leikerts cannot have it both ways in how they define "insurance." If "insurance" in the exception to the exclusion does not mean "insurance" in the sense of paying for the claim at issue, then "insurance" under the policy's definition of "retained limit" does not either.

The Leikerts cannot ignore the AAA policy, and their express admission that the AAA policy does not provide coverage[35] is a tacit admission of the ultimate weakness of their case. They acknowledge that they have not collected from let alone exhausted the limits of the AAA policy, which is the only policy they rely on to save their claim from the exclusion. If it is insurance that AAA provides, then under *Bosco, supra,* it has to be exhausted before the Auto-Owners policy even attaches. If it is not insurance that AAA must provide (because it does not cover the motorcycle), then the condition of the following form endorsement is not satisfied, the exception to the exclusion for injury to a

---

[34] The further argument of Leikerts at the trial court level, that applying the same meaning in the retained limits violates *Geerdes v St Paul Fire & Marine Ins Co,* 128 Mich App 730, 341 NW2d 195 (1983), misses the mark for three reasons. First, this is not Auto-Owners' primary argument, but rather is based on the logical extension of Leikerts' error, in keeping with the rule that a fair reading of the entire contract has to lead to coverage. Second, *Geerdes* contained the word "collectible", in the phrase, "any other insurance collectible by the Insured." 128 Mich app 730, 732. The term "collectible" is not present in the retained limits definition of the Auto-Owners policy that is applicable. Thus, if the meaning connoting paying or collectible is not the concept of "cover such injury to the extent that insurance is provided by an underlying policy" in the following form exclusion, then collectible cannot fairly be read into the retained limits where collectible plainly is not stated. The reference by the Leikerts in the trial court to the (inapplicable) second part of the retained limits definition for drop down to $250, referring to coverage by saying "not covered by other insurance" only provides a contrast that would reinforce the increased amount for retained limits in part (a). Otherwise they are again being unreasonable and not presenting a fair reading of the entire contract, since their beginning premise is that insurance has a different meaning than covered.

[35] Defendants' brief on appeal, p 13.

co-insured does not apply, and the unfulfilled condition means the Auto-Owners umbrella does not "kick in." *Cf Michigan Millers, supra.*

### D. The Leikerts' Proposed Construction Results in the Exception Swallowing the Exclusion and Rendering the Exclusion Nugatory

Fourth, this is an unfair reading because it would have the exception swallow the exclusion and render it nugatory. There has to be a fair reading of the policy that yields an ambiguity, not an unfair reading. See *Raska, supra.* The exclusion says that Auto-Owners will not pay for personal injury to the insured. The exception to the exclusion says that Auto-Owners will pay for personal injury to the insured "to the extent that insurance is provided by an underlying policy listed in Schedule A." Because there will always be an underlying policy listed in Schedule A, reading the exception to the exclusion in the manner urged by the Leikerts – i.e., that any insurance listed in schedule A will trigger coverage under the executive umbrella liability policy even if the listed policy does not apply to the loss at issue – would completely negate the exclusion itself.

In *Amy v MIC Gen Ins Corp*, 258 Mich App 94, 127; 670 NW2d 228 (2003), rev'd on other grounds *Stewart v State*, 471 Mich 692; 692 NW2d 376 (2004), this Court rejected an interpretation that would allow an exception to completely negate an exclusion. A motorcyclist was involved in a fatal collision with a parked vehicle's rear bumper and taillights. The motorcyclist's survivor claimed that the injury was a result of direct physical contact with the bumper and taillights, and these parts constituted "permanently mounted equipment" so as to permit coverage by being with an exception to the parked vehicle exclusion. This Court disagreed because that interpretation would result in the exception swallowing the rule:

unscheduled policy of Progressive. They are oblivious to *Bosco, supra,* in making this argument. The provision they refer to keeps the umbrella excess to even unscheduled underlying insurance. See *Bosco, supra* at 282, 289-290. That is a far cry from saying an umbrella must pay excess of an unscheduled underlying policy. The coverage follows form to scheduled policies, not unscheduled policies.

Another fundamental flaw of this argument is that the co-insured exclusion is in an endorsement. As a result, the general provisions that could potentially create coverage are overridden by the endorsement. "When a conflict arises between the terms of an endorsement and the form provisions of an insurance contract, the terms of the endorsement prevail." *Hawkeye-Security Ins Co, supra,* 185 Mich App at 380. See also, *McKusick v Travelers Indemnity Co,* 246 NW2d 329, 340; 632 NW2d 525 (2001) (citing *Hawkeye*); *Tiano v Aetna Cas & Sur Co,* 102 Mich App 177, 184; 301 NW2d 476 (1980).

The endorsement does not provide that Auto-Owners will cover injuries for which other insurance is provided. Nor does it merely state that Auto-Owners will cover injuries for which underlying insurance is provided. Rather, it states that Auto-Owners "will cover such injury to the extent that insurance is provided by an underlying policy listed in Schedule A." The Progressive policy is not listed in Schedule A. Therefore, the exception to the exclusion does not provide coverage for Mrs. Leikert's claim through the Progressive policy.

Although the Leikerts criticize reliance on *Bosco, supra* 456 Mich 279, (cited in subsection III herein), they fail to cite any authority that requires a result different from *Bosco.* Moreover, their attempt to distinguish *Bosco* on the basis that it dealt only with

## CONCLUSION AND RELIEF REQUESTED

Auto-Owners' executive umbrella liability policy only provides coverage for a claim of bodily injury to an insured if one of its underlying policies listed in schedule A provides insurance for the claim. None do. There are six reasons why Leikerts do not meet the test of ambiguity, a reasonably understood and fair reading of the entire contract leading one to understand that there is coverage.

First, the context of the type of insurance is considered, and it is a strain to think that an umbrella policy would require insurance to be provided as a condition of lifting an exclusion, yet not require that listed insurance to pay. Second, "insurance" so construed would still not lead to coverage because the same word is used in the retained limits definition. A fair reading of the entire contract would not lead to coverage. Third, this is an unfair reading because it would have the exception swallow the exclusion and render it nugatory. Fourth, the comparison to other exclusions for punitive damages and pollution to find ambiguity is incorrect. Fifth, the argument that the exclusion must "be limited in its scope to dealing only with insurance in the AAA policy for a claim by a spouse against a spouse" is not only unsupported by authority, it is flawed: The exclusion is for injury to an insured and Leikerts admit the AAA policy has no exposure for this injury. Finally, Leikerts do not present a fair reading of the policy as a whole because in this context insurance provided and coverage have synonymous meanings. *Michigan Millers Mut Ins Co, supra* 182 Mich App 410.